IN RE ESTATE OF JOHN C. OWEN.

FILED MAY 17, 1905. No. 13,806.

1. **Evidence** examined, and *held* not on'y sufficient to sustain a verdict finding a testator mentally capable of making a will, but to require such verdict.

2. **Will Contest: EVIDENCE: REVIEW.** Where the verdict is the only one which could be sustained under the evidence both admitted and offered by the contestants of a will, and also excluding from consideration all evidence admitted by the court on behalf of the proponent to which contestants objected and on which error

is predicated in this court, the court will not discuss alleged errors of the trial court in receiving evidence offered by the proponent or in rejecting evidence offered by the contestants.

ERROR to the district court for Saunders county: BENJAMIN F. GOOD, JUDGE. *Affirmed.*

*John H. Barry* and *John L. Sundean,* for plaintiff in error.

*H. Gilkeson* and *Simpson & Good, contra.*

DUFFIE, C.

John C. Owen, the testator, died February 23, 1903. The subject of this controversy is a will which he executed July 12, 1902. The testator left surviving him five sons and three daughters, his youngest child being thirty-five years of age. There were also nine grandchildren, the issue of his son Albert and of a daughter, Alzena German, both of whom died prior to the testator. The will in controversy was offered for probate by Thomas Owen, a son, and objections were filed by the grandchildren who were of full age, and upon their application a guardian *ad litem* for the minor grandchildren was appointed by the county court, and also for an incompetent daughter, Emma. The county court admitted the will to probate, and from his decision the guardian *ad litem* took an appeal to the district court. The adult grandchildren did not appeal. In the district court the case was tried on the pleadings filed in the county court, and resulted in a verdict sustaining the will. The objections urged against the will were that the testator did not possess sufficient mental capacity to make a last will and testament at the time the purported will was executed; that it was procured by undue influence exercised upon the testator by his wife and three of his sons, and that the testator's mind had been poisoned toward the contestants by the wife and sons of the testator so that he did not possess sufficient mental capacity to compre-

hend his duties and relations toward the contestants nor his obligations to them.

The first objection urged is that the proponent rested without proof of the testator's death, and relating to this objection we have to say that we will not presume that the contestants were expending their time and energy in objecting to the probate of the will of a person not deceased, and calling upon the court to appoint a guardian *ad litem* for the minor heirs who certainly had no interest unless the party in whose estate they claimed a share was dead at the time. Conceding that the objection filed against the probate of the will, so far as it related to the undue influence exercised by the wife and children of the testator in procuring it, was sufficiently specific, of which we have grave doubts, a careful perusal of the evidence fails to disclose any evidence which, in our judgment, has a tendency to support it.

Coming now to the mental capacity of the testator, there are but two or three circumstances detailed by the witnesses for the contestants which could be considered as tending in any degree to raise a doubt that the testator at the time of making the will was not in full possession of his faculties, and these circumstances have mostly been explained away. It is conceded that he omitted forty acres of his land from the will. The attorney who drew the will was called to the house of the testator for that purpose. He testified that the old gentleman gave him a full description of his property, having the same in mind without reference to any notes or memorandum, and that the forty acres omitted from the will was given him with directions to have it equally divided among his heirs, but that in drafting the will he overlooked this particular forty, and its omission from the will was not caused by oversight or forgetfulness on the part of the old gentleman, but was his own oversight. It is shown also that on one occasion, on going home from a political meeting, he got lost in a cornfield and had to call for assistance to take him to the house. The testator lived in the village of

In re Estate of Owen.

Memphis which was laid out on his land. He occupied a block not far distant from the schoolhouse where the meeting was held. The night was dark, and, in order to avoid the teams coming from the meeting, he left the road and got into the cornfield, and there lost his way, which might well occur to anyone. It is also said that he drove the chickens from the pig pens when feeding his hogs; but it is shown that some of the chickens which entered the pens were killed and eaten by the hogs, and that his efforts to keep them away thereafter was to prevent them from being killed. It is said that at one time he complained of being followed by a ghost, and on another occasion he upbraided a sick son for lying in bed while there was so much work to do, and that this occurred but a short time previous to the son's death. Considerable was said also about his wearing felt boots during the summer season, and a plush or velvet cap through the year. It was explained that for some years previous to his death he was afflicted with corns and bunions on his feet, and that felt boots were the only foot-wear that he could use with any comfort, and even these had to be cut to accommodate the bunions. His reason for wearing the plush or velvet cap does not appear. There were other circumstances which it is claimed tended to show the incapacity of the testator, but these matters were all submitted to the jury under instructions which presented very fairly the whole case, and the verdict not only had sufficient evidence to sustain it, but, as we view it, it called for the verdict which was rendered. The banker with whom the testator did business and his physician who attended him in his last illness testify to his capacity. Of the ten witnesses called by the contestants, but two or three give an opinion that he was of unsound mind, and these opinions are based on such trivial considerations as in our opinion to be without weight. In a careful examination of the evidence we find nothing that impresses us with the idea that the testator was not perfectly capable of transacting business, or that he did not attend to his own business in a capable manner

up to the date that this will was made, and for some time thereafter. His neighbors and friends regarded him as of sound mind, and some of them speak of him as a man of unusual mental capacity and strength. He had lived in Saunders county for thirty years or more. If he was so mentally unsound as not to be capable of making a will, there would seem to be little difficulty in procuring evidence to establish that fact to the entire satisfaction of a court and jury. It is true that under the provisions of his will an incompetent daughter, Emma, was left entirely unprovided for, as were some of the grandchildren; but the record shows that his wife was possessed of property; that they consulted each other relating to the matter of their wills, and that it was fully understood between them that, while the old gentleman would provide for some of his heirs from his own property, his wife would provide for the others. That such an arrangement was fair and equitable and will probably be fully carried out by the wife must be presumed, and under these circumstances, and with this explanation for the reason of not distributing his property more equally among his heirs, it would require a much stronger showing of incapacity of the testator than here appears to justify a court in interfering with the verdict.

It would be useless to spend time in discussing the errors alleged on the rulings of the court in the admission and refusal to receive evidence. If we take into consideration all the evidence offered by the contestants which was rejected by the trial court, and exclude from consideration all evidence offered by the proponent and received by the court on which error is now predicated, still we think that the verdict of the jury could not be different from that returned, and that any other verdict should be set aside.

We recommend therefore that the order of the district court admitting the will to probate be affirmed.

ALBERT and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the order of the district court admitting the will to probate is

AFFIRMED.